United States District Court
Southern District of Texas
**ENTERED**
July 01, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GEORGE SILVERNALE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 17-1209 |
| | § | |
| CAPTAIN LEE A. MARTINEZ, | § | |
| CORRECTIONAL OFFICER NEAL G. | § | |
| NACCARATO, LIEUTENANT CARLOS A. | § | |
| APPLEWHITE, and TEXAS DEPARTMENT | § | |
| OF CRIMINAL JUSTICE, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending and referred is Defendants Texas Department of Criminal Justice, Carlos Applewhite and Neal Naccarato's Motion to Dismiss (Document No. 36) and Defendant Lee Martinez's Motion to Dismiss (Document No. 44). Having considered those motions, the responses, the allegations in Plaintiff's First Amended Complaint (Document No. 24) and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendants' Motions to Dismiss (Document Nos. 36 & 44) both be GRANTED.

## I.      Background and factual allegations

This is a prisoner civil rights case. It was filed by Plaintiff George Silvernale, who was an inmate at the Estelle Unit at the time of the incident(s) made the basis of this lawsuit. Silvernale alleges that on October 12, 2016, after he kicked the door of his cell and verbally confronted Officer Naccarato, Officer Naccarato grabbed his arm through the food tray slot, and his "overly long and sharp fingernails ripped open the skin leaving a long deep gash in Silvernale's wrist which

immediately began to bleed profusely." First Amended Complaint (Document No. 24) at 3. Silvernale alleges that he requested medical assistance for his wound but both Naccarato, and Lieutenant Applewhite denied him medical assistance. Silvernale also alleges that he told Naccarato he planned on filing a grievance against him, after which Naccarato reported to Lieutenant Applewhite that Silvernale had assaulted him. Silvernale was subsequently charged with assault, whereupon he was removed from his cell and his personal property in his cell was mishandled and/or destroyed. At the disciplinary hearing on the assault charge, Silvernale alleges that Captain Lee Martinez, the hearing officer, excluded him from the hearing, and appointed a substitute counsel who did not call any witnesses, present any evidence, or defend Silvernale in any way.

As against Officer Naccarato, Silvernale has alleges claims under 42 U.S.C. § 1983 for: (1) deliberate indifference to his medical needs in violation of the Eighth Amendment; (2) excessive force in violation of the Eighth Amendment; (3) retaliation in violation of the Fourteenth Amendment; and (4) and unreasonable search in violation of the Fourth Amendment. Silvernale has also alleged state law claims against Naccarato for assault and conversion. As against Lieutenant Applewhite, Silvernale has alleged claims under 42 U.S.C. § 1983 for: (1) deliberate indifference to his medical needs in violation of the Eighth Amendment; and (2) retaliation in violation of the Fourteenth Amendment. As against Captain Martinez, Silvernale has alleged a claim under § 1983 for due process violations. Finally, as against the Texas Department of Criminal Justice, Silvernale has alleged a claim under Texas law for negligent hiring and/or retention.

Defendants seek dismissal of all of Silvernale's claims. Defendants first argue that to the extent any of the § 1983 claims were alleged against Defendants Naccarato, Applewhite or Martinez in their official capacities, such claims are viewed as claims against their employer – the Texas

Department of Criminal Justice – and are barred by 11th Amendment sovereign immunity. As for the § 1983 claims against Defendants Naccarato, Applewhite or Martinez in their individual capacities, each Defendant seeks dismissal of the § 1983 claims on the basis of qualified immunity. Finally, with regard to the state law claims, Defendants maintain that they are not plausible given the State's sovereign immunity, and cannot, in any event, be heard in federal court.

## II.     Rule 12(b)(6) Standard of Review

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Plausibility will not be found where the claim alleged in the complaint is based solely on legal conclusions, or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Nor will plausibility be found where the complaint "pleads facts that are merely consistent with a defendant's liability" or where the complaint is made up of "'naked assertions devoid of further factual enhancement.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557)). Plausibility, not sheer possibility or even conceivability, is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 556-557; *Iqbal*, 129 S.Ct. at 1950-1951.

In considering a Rule 12(b)(6) motion to dismiss, all well pleaded facts are to be taken as

3

true, and viewed in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). But, as it is only *facts* that must be taken as true, the court may "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, at 1950. It is only then that the court can view the well pleaded *facts*, "assume their veracity and [ ] determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, at 1950.

III.     **Discussion – § 1983 claims**

Section 1983 of Title 42 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress...." 42 U.S.C. § 1983. "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates." *Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1573 (5th Cir. 1989), *cert. denied,* 493 U.S.1019 (1990). To state a claim under § 1983, plaintiffs must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See Bass v. Parkwwod Hosp.,* 180 F.3d 234, 241 (5th Cir. 1999). "Because the Fourteenth Amendment protects liberty and property interests only against invasion by the state, a Section 1983 plaintiff alleging the deprivation of Due Process under the Fourteenth Amendment must also show that state action caused his injury." *Id.*

States and state agencies cannot be sued under § 1983 because such claims are barred by the State's Eleventh Amendment sovereign immunity. *Thornton v. Merch.*, 342 F. App'x 10, 11 (5th

Cir. 2009) ("[A]s an instrumentality of the state, TDCJ–ID is immune from [ ] suit on Eleventh

Amendment grounds") (quoting *Aguilar v. Tex. Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th

Cir.1998)). Such Eleventh Amendment immunity also extends to § 1983 claims alleged against state

actors in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989);

*Hafer v. Melo*, 502 U.S. 21, 25 (1991).

For § 1983 claims alleged against state actors in their individual capacities, the doctrine of

qualified immunity provides those state actors with an affirmative defense. *Harlow v. Fitzgerald*,

457 US. 800, 818 (1982). In general, qualified immunity is available for public employees and

officers whose duties require the exercise of discretion. *Anderson v. Creighton*, 483 U.S. 635, 638

(1987), and whose acts fall within the scope of their discretionary authority. *Brooks v. George

County, Miss.,* 84 F.3d 157, 164 (5th Cir.), *cert denied*, 519 U.S. 948 (1996). "[G]overnment officials

performing discretionary functions, generally are shielded from liability for civil damages insofar

as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Behrens v.

Pelletier,* 516 U.S. 299, 305-06 (1996). Qualified immunity protects "all but the plainly

incompetent or those who knowingly violate the law." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.

1994) (quoting *Malley v. Briggs*, 457 U.S. 335, 341 (1986)).

A dual analysis is applied to qualified immunity defenses. "The first question is whether the

officer violated a constitutional right. The second question is whether the 'right at issue was "clearly

established" at the time of [the] alleged misconduct.'" *Morrow v. Meachum*, 917 F.3d 870, 874 (5th

Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The answer to the first

question is determined by viewing the allegations and evidence in the light of the currently

5

applicable constitutional standards. *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993). The answer to the second question is determined by reference to the law as it existed at the time of the incident made the basis of the suit. *Id.* at 108. The plaintiff bears the burden to overcome a claim of qualified immunity, and that burden is "heavy," particularly as it relates to the showing that the right at issue was "clearly established." *Morrow*, 917 F.3d at 874. "A right is clearly established only if relevant precedent 'ha[s] placed the ... constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Here, any § 1983 claims Silvernale has alleged, or attempted to allege, against the Texas Department of Criminal Justice (TDCJ), or any of the individual defendants in their official capacities, are barred by the State's Eleventh Amendment immunity and are subject to dismissal on that basis. As for the claims against the individual defendants in their individual capacities they will each be addressed below.

### A.   Eighth Amendment deliberate indifference to his medical needs claim against Naccarato and Applewhite

Silvernale alleges in his First Amended Complaint that Officer Naccarato and Lieutenant Applewhite were "deliberately indifferent to [his] medical needs" insofar as they both ignored his requests for medical treatment for the scratch/wound Naccarato had inflicted with his fingernails. According to Silvernale, he was "denied medical treatment for three days," during which time the cut became painful and infected. First Amended Complaint (Document No. 24) at 9. Defendants maintain that this claim is subject to dismissal because Silvernale has not alleged any facts that would support a conclusion that they were deliberately indifferent to his "serious" medical need. In addition and in the alternative, Defendants argue that they are entitled to qualified immunity.

6

In *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018), the Fifth Circuit Court of

Appeals succinctly summarized the general contours of a denial of medical care claim:

> A prison official violates the Eighth Amendment's prohibition against cruel and
> unusual punishment when his conduct demonstrates deliberate indifference to a
> prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction
> of pain.' " *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (per curiam) (quoting
> *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *see
> also Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).
> "[D]elay in medical care can only constitute an Eighth Amendment violation if there
> has been deliberate indifference, which results in substantial harm." *Mendoza v.
> Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). A prison official acts with deliberate
> indifference "only if he knows that inmates face a substantial risk of serious harm
> and disregards that risk by failing to take reasonable measures to abate it." *Farmer
> v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see also
> Mendoza*, 989 F.2d at 195. In contrast, "an inadvertent failure to provide adequate
> medical care" does not violate the Eighth Amendment. *Estelle*, 429 U.S. at 106, 97
> S.Ct. 285. Thus, mere disagreement with one's medical treatment is insufficient to
> show deliberate indifference, as are claims based on unsuccessful medical treatment,
> negligence, or medical malpractice. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.
> 1991) (per curiam).

Here, Silvernale's allegations, taken as true, do not state a plausible Eighth Amendment denial of

medical care claim. First, there are no allegations that would support a conclusion that Naccarato

or Applewhite were deliberately indifferent to Silvernale's serious medical need. Silvernale's

allegations are that he was scratched/cut by Officer Naccarato's fingernails, and that when he

requested medical attention for the cut, which was bleeding, Officer Naccarato merely provided him

with a band-aid. It was not until three days later than Silvernale was allowed to seek formal medical

treatment. These allegations, taken as true, do not support a conclusion that Silvernale had a

"serious" medical need.[1] They also do not support a conclusion that Naccarato and Applewhite were

---

[1] "A serious medical need is one for which treatment has been recommended or for which
the need is so apparent that even laymen would recognize that care is required." *Gobert v.
Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006).

cognizant of a "serious" medical need, and intentionally disregarded or were indifferent to it. Silvernale has, therefore, not stated a plausible Eighth Amendment denial of medical care claim.

**B.     Eighth Amendment excessive force claim against Naccarato**

Silvernale alleges in his First Amended Complaint that Officer Naccarato used excessive force against him when he "intentionally, with malice, charged Silvernale's cell door [and] reached through the food tray slot to grab him." First Amended Complaint (Document No. 24) at 10.

A plausible excessive force claim under the Eighth Amendment requires allegations that force was used maliciously and sadistically for the purpose of causing harm, and was not the result of a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). In *Hudson v. McMillian*, 503 U.S. 1, 7 (1992), the Supreme Court set forth five factors to consider when evaluating an excessive force claim: (1) "the extent of injury suffered;" (2) "the need for application of force;" (3) "the relationship between that need and the amount of force used;" (4) "the threat 'reasonably perceived by the responsible officials;'" and (5) "'any efforts made to temper the severity of a forceful response." (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

Here, Silvernale's allegations, taken as true, are that Naccarato responded to Silvernale's outbursts, including Silvernale's kicking of his cell door and his verbal confrontation of Naccarato, by grabbing Silvernale's arm through the food tray slot of his cell door. The cut on Silvernale's arm was caused by "Naccarato's overly long and sharp fingernails," which dug into Silvernale's wrist. These allegations do not support an excessive force claim insofar as Silvernale admits that Naccarato had grabbed his wrist in response to Silvernale's misconduct and insofar as there are no allegations from which it could be inferred that Naccarato intended to scratch Silvernale with his fingernails. Silvernale has, therefore, not stated a plausible Eighth Amendment excessive force claim.

8

**C.      Fourteenth Amendment retaliation claim against Naccarato and Applewhite**

Silvernale alleges in his First Amended Complaint that Naccarato and Applewhite retaliated against him after he threatened to file a grievance against Naccarato based on Naccarato's alleged use of excessive force.  According to Silvernale, he "threatened to bring a grievance proceeding against Naccarato.  Naccarato responded by destroying Silvernale's property.  Then, when Silvernale attempted to bring a cause of action against Naccarato for the destruction of his property, he was denied attendance at a [disciplinary] hearing."  First Amended Complaint (Document No. 24) at 10, 13.

A plausible retaliation claim under § 1983 requires allegations of: "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).  Where a retaliation claim is based on conclusory allegations, it cannot withstand a Rule 12(b)(6) motion to dismiss.  *Id.* (citing *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)).

Here, Silvernale alleges that his threat to file a grievance against Naccarato led to two instances of retaliation: the destruction of Silvernale's personal property; and Naccarato's filing of a disciplinary charge against Silvernale, and Silvernale's subsequent exclusion from the disciplinary hearing.  Neither alleged instance of retaliation can, or will, support a § 1983 retaliation claim.  First, Silvernale's own allegations do not support a retaliation claim based on the disciplinary charge that was filed against him.  Silvernale alleges in his First Amended Complaint that he asked Naccarato for medical attention for the scratch/cut Naccarato had inflicted; Naccarato "tossed" Silvernale a band-aid but denied Silvernale's request for disinfectant; "Naccarato left to make a statement to Lieutenant Applewhite to the effect Silvernale had attempted to assault him and that was how

9

Silvernale received his injury;" and then Silvernale "told Naccarato he was going to file a grievance against him." This chronology of allegations does not support a plausible retaliation claim based on the second alleged instance of retaliation – Naccarato's filing of a disciplinary charge against Silvernale, and Silvernale's subsequent exclusion from the disciplinary hearing. Silvernale alleges that he threatened to file a grievance against Naccarato *after* Naccarato had already reported to Lieutenant the conduct upon which Silvernale's disciplinary charge was based. As for the destruction of Silvernale's personal property, even if Silvernale had sufficiently alleged facts from which a retaliatory animus could be inferred, the destruction of Silvernale's personal property is viewed as a de minimis injury that is simply insufficient to support a § 1983 retaliation claim. *See Ali v. Jones*, Civil Action No. 4:07cv337, 2007 WL 2141381 (S.D. Tex. July 19, 2007) (concluding that confiscation of prisoner's personal property was a "de minimis" injury that could not support a retaliation claim under § 1983); *Howell v. Quarterman*, Civil Action No. G-06-0112, 2008 WL 4724486 (S.D. Tex. October 24, 2008) (transfer from cell, search of cell, and assertion of missing items following cell search and transfer were insufficient to state a retaliation claim). Silvernale has, consequently, not stated plausible retaliation claims against Defendants Naccarato and Applewhite.

D.   **Fourth Amendment unreasonable search claim against Naccarato**

Silvernale alleges that Naccarato seized his property, that he was "completely deprived of his possessory interests in his property," that the "property was not contraband," and that there "can be no justification the seizure and destruction of [his] property somehow serve[d] the legitimate interests of the prison." First Amended Complaint (Document No. 24) at 11. Defendant Naccarato seeks dismissal of this claim on the basis that prisoners have no Fourth Amendment rights while incarcerated.

10

In *Hudson v. Palmer*, 468 U.S. 517, 525 (1984), the Supreme Court made it clear that the Fourth Amendment right against unreasonable searches and seizures does not apply in the prison context. Because, as a matter of law, Silvernale had no Fourth Amendment expectation of privacy, he has not, and cannot, state a plausible Fourth Amendment claim.

### E.    Fourteenth Amendment due process claim against Martinez

As against Captain Martinez, the officer who presided over Silvernale's disciplinary hearing, Silvernale alleges a Fourteenth Amendment due process claim. According to Silvernale, when the disciplinary hearing was conducted, "he was denied his right to go. He was denied his right to have witnesses testify on his behalf. He was denied the right to confront the individuals bringing accusations against him." First Amended Complaint (Document No. 24) at 15. While Martinez argues in his Motion to Dismiss that Silvernale's § 1983 due process claim is subject to dismissal because Silvernale has not alleged a life, liberty or property interest that was affected by the outcome of the disciplinary hearing, Silvernale has pointed to the More Definite Statement he provided in response to the Court's Order (Document No. 13), in which he identified the liberty interest at stake as the loss of 200 days of good conduct time. That alleged liberty interest could give rise to a claim under 28 U.S.C. § 2254 if the 200 days of loss good conduct time affected the duration of Silvernale's custody. *See Spicer v. Collins,* 9 F.Supp.2d 673, 685 (5th Cir. 1998); *Malchi v. Thaler*, 211 F.3d 953, 957-58 (5th Cir. 2000). It does not, however, give rise to a viable due process clam under § 1983, especially where, as here, the disciplinary proceeding was not terminated in Silvernale's favor. *See Ortiz v. Davis*, No. CV H-16-3555, 2019 WL 313775, at *5 (S.D. Tex. Jan. 24, 2019)("To recover damages for an allegedly 'unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,

a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus [under] 28 U.S.C. § 2254.'") (quoting *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)); *see also Smith v. King*, No. 4:18CV219-DAS, 2019 WL 361132, at *2 (N.D. Miss. Jan. 29, 2019) (concluding that due process claim about loss of good time credits was a claim to be brought in a habeas corpus proceeding, not as a § 1983 claim).   Accordingly, Silvernale has not alleged a plausible due process claim against Defendant Martinez under § 1983.

## IV.     Discussion – State law claims

In addition and in the alternative to his § 1983 claims, Silvernale alleges two state law claims against Defendant Naccarato – for assault and for conversion – and a negligent hiring/retention claim against TDCJ.  Defendants seek dismissal of these claims on the basis that such claims are barred by sovereign immunity.

In *Huff v. Refugio County Sheriff's Department*, Civil Action No. 6:13-CV-00032, 2013 WL 5574901 *3-4 (S.D. Tex. Oct. 9, 2013) (Costa, J.), the Court explained, very succinctly, why state law intentional tort claims against states, their political subdivisions, and their employees must be dismissed based on sovereign immunity grounds:

> The common law doctrine of sovereign immunity protects states and their political subdivisions from suits for money damages. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex.2006) (citations omitted). The Texas Tort Claims Act provides a limited waiver of immunity for certain suits against governmental entities. Tex. Civ. Prac. & Rem.Code Ann. § 101.021; *Reata Constr. Corp.*, 197 S.W.3d at 373–74. But the Act specifically preserves immunity against intentional torts, such as assault and battery. Tex. Civ. Prac. & Rem.Code § 101.057(2) (immunity applies

to claims "arising out of assault, battery ... or any other intentional tort").

The Texas Tort Claims Act also has the effect of extending sovereign immunity to government employees. Subsection 101.106(f) of the Act states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem.Code Ann. § 101.106(f). Thus, for subsection 101.106(f) to apply to a suit against a government employee, two conditions must be met: (1) the conduct at issue must have been within the general scope of the defendant's employment; and (2) the suit could have been brought "under this chapter" against the governmental unit. *Id.* The Texas Supreme Court recently construed the second condition to cover any "claim [ ] in tort and not under another statute that independently waives immunity." *Franka v. Velasquez,* 332 S.W.3d 367, 381 (Tex.2011); *see also Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 658 (Tex.2008) ("[W]e have never interpreted 'under this chapter' to only encompass tort claims for which the Tort Claims Act waives immunity.").

Here, the state law intentional tort claims of assault and conversion against Defendant Naccarato are subject to dismissal on the same sovereign immunity grounds addressed by the Court in *Huff.* As for the negligent hiring and/or retention claim against TDCJ, such a negligence-based claim is also barred by the state's sovereign immunity. *See* TEX. CIV. PRAC. & REM. CODE § 101.021 ("A governmental unit in the state is liable for: (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if: (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and (B) the employee would be personally liable to the claimant according to Texas law; and (2) personal injury and death so

13

caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."); *see also e.g. Tolan v. Cotton*, No. 4:09-CV-1324, 2015 WL 5310801, at *7 (S.D. Tex. Sept. 11, 2015) (concluding that sovereign immunity had not been waived under the Texas Tort Claims Act for claims of negligent hiring and/or supervision). The state law claims are, consequently, also subject to dismissal as not plausible.

## V.      Conclusion and Recommendation

Based on the foregoing, and the conclusion that Plaintiff George Silvernale has not alleged any plausible claims against any of the Defendants, the Magistrate Judge

RECOMMENDS that Defendants Texas Department of Criminal Justice, Carlos Applewhite and Neal Naccarato's Motion to Dismiss (Document No. 36) and Defendant Lee Martinez's Motion to Dismiss (Document No. 44) both be GRANTED and Plaintiff's claims all be DISMISSED WITH PREJUDICE.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United*

14

*Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written

objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this _____ day of June, 2019.


FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

15